IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOLANDA WHITEST, et. al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:08-CV-2496-LDD |
| | : | |
| HARLAN ELECTRIC COMPANY, et. al. | : | |

## MEMORANDUM

AND NOW, this 12th day of June 2008, upon consideration of Plaintiffs' Motion to Remand (Doc. No. 3), Defendants' Response in Opposition (Doc. No. 5), and Plaintiffs' Reply (Doc. No. 6), it is hereby ORDERED that Plaintiffs' Motion is GRANTED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises out of a tragic accident on July 25, 2004 in which two teenagers were struck and killed by an oncoming Amtrak Acela train. On July 24, 2006, plaintiffs commenced suit in the Philadelphia Court of Common Pleas, alleging negligence on the part of Amtrak a/k/a National Railroad Passenger Corporation ("Amtrak"), the Commonwealth of Pennsylvania ("the Commonwealth"), and multiple other entities. On August 4, 2006, defendants removed the case to the Eastern District of Pennsylvania. Being that the Eleventh Amendment barred plaintiffs' claims against the Commonwealth in federal court, however, and in the interest of avoiding duplicative state and federal proceedings, this Court remanded the case back to state court on October 6, 2006. (See Civil Action 06-3471, October 6, 2006 Order.)

In the year and a half since then, this matter has proceeded in state court, with the parties having engaged in extensive discovery as well as having filed dispositive motions. On May 27,

1

2008, the Honorable Sandra Mazer Moss of the Philadelphia Court of Common Pleas granted the Commonwealth's motion for summary judgment and dismissed the Commonwealth from the case. Having denied the other defendants' summary judgment motions, however, Judge Moss listed the case for trial. On May 29, 2008, defendants removed the case for a second time to this Court, citing federal question jurisdiction on the basis of Amtrak's participation as a defendant. Plaintiffs now move, once again, for remand back to state court.

II.     LEGAL STANDARD

It is well-established in the Third Circuit that the removal statutes "are to be strictly construed against removal and *all doubts should be resolved in favor of remand*." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citing Abels v. State Farm & Casualty Co., 770 F.2d 26, 29 (3d Cir. 1985) (emphasis added)). The court's assessment should be made based on the plaintiff's pleading at the time of removal, and the defendant bears the "heavy burden of persuasion" to show the existence of federal jurisdiction. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quoting Steel Valley, 809 F.2d at 1012 n.6). Furthermore, in ruling on a remand motion "a district court must . . . resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. at 111.

III.    DISCUSSION

The issue before this Court — whether a case becomes removable after the dismissal of a party whose presence initially rendered the case *un*removable — turns on the applicability of the voluntary-involuntary rule, as articulated by the Supreme Court in Great Northern Railway Co. v. Alexander, 246 U.S. 276 (1918):

> It is also settled that a case, *arising under the laws of the United States*, non-removable on the complaint, when commenced, cannot be converted into a

2

> removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant.

Id. at 281 (emphasis added). Great Northern's voluntary-involuntary rule reinforces the principle that "the plaintiff is the master of the complaint," see Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 821 (2002), and that with the exception of fraudulent joinder, he should have full control over the forum in which he chooses to have his claims adjudicated.

Here, defendants assert that because the Commonwealth was dismissed from the case on May 27, 2008, the Eleventh Amendment issue which originally barred its removal no longer exists. Therefore, they argue that pursuant to 28 U.S.C. § 1446(b), the case "bec[a]me removable as of May 28, 2008." (Defs.' Notice of Removal ¶ 6.) Plaintiffs, however, argue that because Judge Moss's dismissal of the Commonwealth was "unquestionably involuntary" on their part, under the voluntary-involuntary rule, the case remains unremovable. (Pls.' Memo. at 18.)

At the outset, it should be noted that the parties do not dispute the continuing validity of the voluntary-involuntary rule, even after the 1949 establishment of § 1446(b). Rather, their arguments center on the precise scope of the rule, specifically, whether the rule may properly be applied to all removal cases or limited to only those removable on diversity grounds. A review of the relevant case law confirms defendants' contention that the vast majority of cases in this area of jurisprudence involve the dismissal of a non-diverse party. However, we do not find this point dispositive, as many courts have read Great Northern to stand for the broader proposition that involuntary action in a state court proceeding cannot force a plaintiff into federal court. See,

e.g., Self v. General Motors Corp., 588 F.2d 655, 659 (9th Cir. 1978) (discussing Great Northern and concluding that "the determination of whether federal subject-matter jurisdiction exists depends only upon plaintiff's complaint and the context in which it is found); Lewis v. C.J. Langenfelder & Son, Inc., 2003 U.S. Dist. LEXIS 20164, *10-13 (E.D. Va. May 2, 2003) ("In terms of the clear rule announced in Great Northern, it would seem that the voluntary-involuntary rule applies to any instance where a case not initially removable becomes so"); Warren Bros. Co. v. Community Bldg. Corp., 386 F. Supp. 656, 660 (M.D.N.C. 1974) (finding the rule's reasoning applicable to all cases covered by § 1446(b) and not only those initially unremovable due to lack of diversity of citizenship); Morsani v. Major League Baseball, 79 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999) ("In both federal question and diversity cases, . . . Section 1446(b) restricts defendants from removing most cases when the circumstance potentially allowing removal arises through no consequence of the plaintiff's actions.").

Indeed, a literal reading of Great Northern's enunciation of the voluntary-involuntary rule, in which the Supreme Court specifically refers to cases "arising under the laws of the United States," see Great Northern, 246 U.S. at 281, seems to belie defendants' argument that the rule is limited solely to diversity cases.  Great Northern's broad language — which still appears to be good law — reflects no intention to except from the rule situations such as the one here, and we cannot locate any precedential case which articulates a carve-out for the rule's applicability to federal question removal.  We are also persuaded by the logic in Lewis, 2003 U.S. Dist. LEXIS at *13, that "[t]he absence of case law applying the rule to situations outside of the diversity context should not be taken as evidence that the rule only applies to such cases," particularly since the circumstances of this case are somewhat exceptional.

4

As such, in this instance we see no reason to demarcate between the voluntary-involuntary rule's applicability in diversity cases and federal question cases, especially when defendants point to no authority for us to do so.  Even if this Court were to view the scope of the rule as unclear, our obligation to "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff[s]," Boyer, 913 F.2d at 111, requires a finding in their favor.  Moreover, in light of the Third Circuit's directive that the removal statutes be strictly construed against removal, we cannot find defendants to have met their burden.  Remand is therefore appropriate.

IV.     CONCLUSION

For the reasons stated above, it is hereby ORDERED that Plaintiff's Motion to Remand (Doc. No. 3) is GRANTED.  The Clerk of Court is directed to transfer the case file to the Court of Common Pleas of Philadelphia County, and to close this matter for statistical purposes.   An appropriate Order follows.